## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JUNCTION PIPELINE COMPANY, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3347 |
| | § | |
| PLAINS ALL AMERICAN | § | |
| PIPELINE, L.P., PMC (NOVA SCOTIA) | § | |
| COMPANY, and PLAINS MARKETING | § | |
| CANADA, L.P., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Junction Pipeline sued Plains All American Pipeline, PMC (Nova Scotia) Co., and Plains Marketing Canada L.P. (the "Plains Defendants") in Harris County District Court. Junction sought a declaratory judgment that it owns the pipeline system it alleges to be the subject of a 1966 Presidential Permit. (Docket Entry No. 19). Junction also asserted claims for quiet title, trespass, and conversion, and sought an injunction against any claim of ownership over, or any act of interference with, its alleged property interest in the pipeline system. (*Id.*). The Plains Defendants timely removed. (Docket Entry Nos. 1, 1-1).

The Plains Defendants then moved to dismiss for: failure to state a claim under Rule 12(b)(6); lack of personal jurisdiction under Rule 12(b)(2); and insufficient service of process under Rules 12(b)(4) and 12(b)(5). (Docket Entry No. 21). Junction responded and sought jurisdictional discovery, and the Plains Defendants replied. (Docket Entry Nos. 28, 30).

Based on the pleadings; the motion, response, and reply; and the applicable law, the court grants the motion to dismiss for failure to state a claim and the motion to dismiss for lack of personal

jurisdiction. The court denies the motion to dismiss for insufficient service of process as moot, and denies Junction's request for jurisdictional discovery. The motion to dismiss under Rule 12(b)(6) is granted without prejudice and with leave to amend. An amended pleading must be filed by **March 1, 2019**.

The reasons for these rulings are detailed below.

## I.  Background

This case emerged from the growth of oil production along the United States border with Canada in the 1960s. The Moulton Pool extends over Montana's border with Canada. (Docket Entry No. 19 at ¶ 7). The Pool is near the Cut Bank Sand field in Montana. (*Id.*). Murphy Oil Corporation, which owned the Canadian-side production from the Moulton Pool, sought to import crude oil from that Pool into the United States in the mid-1960s. (*Id.*).

Companies intending to build and operate pipelines across the border must apply for and receive a Presidential Permit for the pipeline. *See* Exec. Order No. 11,423, 33 Fed. Reg. 11,741 (Aug. 16, 1968); Exec. Order No. 13,337, 69 Fed. Reg. 25,229 (Apr. 30, 2004). The State Department now has the delegated authority to review Permit applications and grant them. Exec. Order No. 13,337, § (1)(a).

In 1965, Murphy Oil applied for a Presidential Permit, which President Lyndon Johnson granted in 1966. (Docket Entry No. 19 at ¶ 7). The Permit allowed Murphy Oil to "construct, operate and maintain a pipeline for crude oil from Toole County, Montana, to the international boundary line between the United States and Canada, and to connect such facilities with like

facilities in the Province of Alberta, Canada." (Docket Entry No. 21-1 at 2).[1] The Permit stated that the American facilities "are described and situated as set forth in the application of the permittee for this permit" and that the "application is made part of this permit." (*Id.*). The Permit application specified a 3-inch line, running for 1/3 of a mile, a measuring station, and a block value, all in the United States. (Docket Entry No. 19 at ¶ 7). Junction also alleges that the Permit "attach[ed] to the pipeline facilities which are the subject of the application on which the [P]ermit [was] issued." (*Id.*). Murphy Oil built a pipeline system on the Canadian side of the border that was called the Milk River Pipeline. (Docket Entry No. 21 at 7). Junction does not allege if Murphy Oil also had a pipeline system or if it planned to build one on the American side of the border.

Scurlock Permian Corporation transported crude oil from Canada into the United States beginning in 1966. (Docket Entry No. 19 at ¶ 8). Scurlock Permian laid a pipeline in the United States to the Canadian border, and connected it to Murphy Oil's manifold. (*Id.*). A manifold is a junction at which numerous pipelines converge or allow a crude oil supply to divide into multiple outlets.

The Scurlock Permian pipeline ran from the United States side, crossed the border, and extended "10 feet on the Canadian side." (*Id.*). The Scurlock Permian pipeline ran for 1/3 of a mile. (*Id.*). Murphy Oil used this pipeline to import crude oil into the United States. (*Id.*). The pipeline system included a measurement unit and a block valve. (*Id.*). Junction asserts that "[t]his [Scurlock Permian] line and associated facilities were the facilities referenced in the [1966 P]ermit," even

<hr>

[1] The Plains Defendants attached to their motion to dismiss the 1966 Presidential Permit and the 2006 Presidential Permit. (Docket Entry Nos. 21-1, 21-2). Because Junction refers to both Permits in its amended complaint and they are central to its claims, the court may consider the Permits in deciding the motion. *See Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

though Scurlock Permian "built, owned, and operated" that pipeline. (*Id.*). Scurlock Permian imported crude oil from Murphy Oil into the United States through this Cut Bank Pipeline until it was shut in 1992. (*Id.* at ¶ 11).

Murphy Oil received a permit from the Canadian National Energy Board in 1986,[2] allowing the company to expand its crude oil imports from the Koch Bow River System into the United States. (*Id.* at ¶ 9). The Board allowed Murphy Oil to connect the Koch Bow River System to the Murphy Oil's "border area gathering system." (*Id.*). Scurlock Permian did not expand its system to import more crude oil. (*Id.*). Junction alleges that Murphy Oil's application for the 1966 Permit stated that Scurlock Permian would need to expand its facilities if Murphy Oil decided to import larger amounts of crude oil into the United States. (*Id.*).

Junction alleges on information and belief that Plains or Cenex, another company operating in the Cut Bank region, imported crude oil from Canada into the United States using Murphy Oil's manifold at the Moulton Pool entry point beginning in 1986. (*Id.* at ¶ 15). Cenex built a 10-inch pipeline that connected to Murphy Oil's manifold in Canada, importing about 30,000 barrels of crude oil per day through this pipeline from 1986 to 1992. (*Id.* at ¶¶ 10–11). From 1986 to the present, crude oil moved through the Murphy Oil pipeline system, which Plains owned beginning in 2002, to the United States border with Canada and then into the United States, using larger-diameter lines that ran next to the lines that had been placed in 1986. (*Id.* ¶ 15).

Junction alleges on information and belief that there were no new Presidential Permits or other Permits for importing crude oil into the United States at the Moulton Pool entry point. (*Id.* at

---

[2] Junction does not explain what "NEB" stands for in its amended complaint or its brief, but it appears to refer to the National Energy Board, a regulatory agency created by the government of Canada to oversee international and interprovincial aspects of the oil and gas industries.

¶ 12). Instead, "[n]o lines built after 1966 utilized the actual permitted facilities but operated under the auspices of the 1966 [Presidential P]ermit." (*Id.*).

In 1999, Scurlock Permian "sold its assets to Plains and subsidiaries." (*Id.* at ¶ 13). The transaction included transferring ownership of the American side Cut Bank System, which had been closed in 1992. (*See id.* at ¶¶ 11, 14). In 2002, the Plains Defendants purchased Murphy Oil's "Canadian pipeline/gathering assets, including those at the border." (*Id.* at ¶ 13). Plains sold the former Scurlock Permian Cut Bank System assets—including pipelines, land rights, and permits—to Triangle Services LLC in 2008. (*Id.* at ¶ 14). Shortly thereafter, Triangle conveyed the Cut Bank System to Junction. (*Id.*). Junction does not allege ownership of the Milk River Pipeline. (*See id.*; Docket Entry No. 21 at 8).

In 2005, PMC Nova Scotia filed a Presidential Permit application for itself and for Plains Marketing Canada L.P. with the State Department, seeking to transfer the 1966 Presidential Permit or obtain a new permit for the pipelines that the 1966 Presidential Permit covered. (Docket Entry 19 at ¶ 16). The State Department issued the Permit in 2006. (*Id.*). The Federal Register reported that PMC Nova Scotia sought the Permit "to operate and maintain the Milk River Pipeline crossing the U.S.–Canada border." (*Id.*). The 2006 Presidential Permit stated that the Plains companies had to "abide by the relevant terms and conditions of the [P]ermit previously held by Murphy Oil," but "operation of the pipeline will remain essentially unchanged from that previously permitted." (*Id.*).

Junction alleges that the Plains Defendants' installation—at some unspecified time—of additional lines next to the lines used before 1986 and the lines placed in 1986 violated the 1966 Presidential Permit because "[i]nstallation of additional lines is undeniably a substantial change." (*Id.*). Junction alleges that because it has "clear ownership of the Permian Cut Bank System and all

appurtenances thereto," it has "the right to seek approval from the Department of State for the transfer of the 1966 presidential permit from Plains to Junction." (*Id.* at ¶ 17). Junction seeks a declaratory judgment that it owns the pipeline system that is the subject of the 1966 Presidential Permit, arguing that those assets were transferred from Plains to Triangle and then sold by Triangle to Junction. (*Id.* at 10). Junction alleges that its ownership derives from the assets Triangle sold Junction in 2008. (*Id.*).

Junction also seeks to remove what it alleges is a cloud on its ownership of the Cut Bank System. Junction argues that the System is covered by the 1966 Presidential Permit. (*Id.* at ¶ 19). Junction argues that because it owns the Cut Bank System and "appurtenances thereto," and because the 1966 Permit "was obtained for the Permian Cut Bank System," the Plains Defendants' use of the 1966 Permit to operate pipelines in that area "disparage[s] Junction's ownership of the Cut Bank System." (*Id.* at ¶¶ 19–20). Junction seeks a declaratory judgment that: "Junction owns the Cut Bank System and all appurtenances thereto free and clear from any liens, encumbrances, burdens, rights and claims of any person or entity"; and "the claims by [the Plains Defendants] to any type of ownership interest in [the] Cut Bank System and all appurtenances thereto, or the right to use the same, are wrongful and without justification." (*Id.* at ¶ 21). Junction asks the court to "cancel[] or remov[e] said wrongful claims as clouds or encumbrances" and to quiet its title to the Cut Bank System. (*Id.*).

Junction also alleges that the Plains Defendants have committed trespass by using the Cut Bank System "and, or appurtenances thereto, without Junction's consent or agreement." (*Id.* at ¶¶ 22–23). Junction seeks "damages from [the Plains] Defendants for the value of th[at] use." (*Id.*). Junction alleges that the Plains Defendants' acts also amount to conversion because they

"wrongfully asserted dominion and control over" Junction's interests in the Cut Bank System. (*Id.* at ¶ 25).

Junction also seeks an injunction restraining the Plains Defendants from "(i) claiming ownership . . . or using the Cut Bank System and, or appurtenances thereto to import crude from Canada to the U.S.; and (ii) from engaging in any acts to deny Junction access to and exclusive use of the Cut Bank System and, or appurtenances thereto." (*Id.* at ¶ 26).

Each claim and response is analyzed below.

## II.     The Motion to Dismiss Under Rule 12(b)(2)

### A.     The Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). A plaintiff must make a prima facie showing that the defendant is subject to personal jurisdiction; "[p]roof by a preponderance of the evidence is not required." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *D.J. Invs. Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985)). At the motion stage of litigation, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.*

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The Texas long-arm statute extends to the limits of federal due process. *Id.*

To satisfy the requirements of due process, the plaintiff must demonstrate "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609 (citation omitted). "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'" *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)), *abrogated on other grounds*, *Water Splash, Inc. v. Moon*, 137 S. Ct. 1504, 1508 (2017). "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

A court may exercise general jurisdiction over a nonresident defendant "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The Fifth Circuit has explained that "the continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Johnston,* 523 F.3d at 609 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

Specific personal jurisdiction "is confined to adjudication of 'issues deriving from, or

connected with, the very controversy that establishes jurisdiction.'" *Goodyear*, 564 U.S. at 919. The question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 294 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

A court considers two issues in deciding whether a defendant's suit-related conduct creates a sufficient relationship with the forum state. *See id.* "First, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 475). The limits imposed on a state's "adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden*, 571 U.S. at 284 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

"Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). A

"plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. While "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," the "defendant's relationship with a plaintiff or third party, standing alone," cannot confer personal jurisdiction. *Id.* at 286. The defendant's own "affiliation with the state," not "random, fortuitous, or attenuated contacts [it] makes by interacting with other persons [or entities] affiliated with the State," must provide the basis for jurisdiction. *Id.* (quoting *Burger King*, 471 U.S. at 475); *see AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC,* 878 F. Supp. 2d 779, 787 (S.D. Tex. 2013) ("[S]pecific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident").

### B. Analysis

The amended complaint alleges "on information and belief" that this court has personal jurisdiction over the Plains Canadian Defendants—PMC (Nova Scotia) Company and Plains Marketing Canada L.P.—because:

> each of the Defendants have had and continue to have "continuous and systematic" activities in the State of Texas and each . . . [has] purposefully availed themselves of the benefits and protections of the State of Texas by establishing "minimum contacts" within Texas.

(Docket Entry No. 19 at ¶ 5). Both Plains Canadian Defendant are described as businesses "conducting or having conducted business in Texas." (*Id.* at ¶¶ 3–4). The amended complaint alleges that PMC (Nova Scotia) Company "is a Nova Scotia unlimited liability company" and that Plains Market Canada L.P. "is a foreign limited partnership"; this allegation appears to be undisputed. (*Id.*).

The Plains Defendants argue that Junction has not met its burden of establishing general jurisdiction over PMC (Nova Scotia) Company and Plains Marketing Canada L.P. because Junction "has not pleaded a single contact between" these Plains Canadian Defendants and Texas. (Docket Entry No. 21 at 24). They argue that Junction provides only conclusory allegations of the Plains Canadian Defendants' activities in Texas, without alleging factual support for those allegations or describing the extent of these alleged activities. (*Id.* at 24–25). The only activities Junction describes in detail are those alleged to have occurred at the United States border with Canada. (*Id.* at 25). The Plains Defendants contend that, without more, these allegations cannot show that they are "essentially at home" in Texas. (*Id.*).

The Plains Defendants also argue that the underlying torts Junction asserts against them cannot give rise to specific jurisdiction in Texas because these torts are not alleged to have occurred "in whole or in part in" Texas. (*Id.* (citing TEX. CIV. PRAC. & REM. CODE § 17.042)). The Plains Defendants argue that the alleged conversion and trespass occurred in Montana or Canada, where the pipelines are located. (*Id.*). The Plains Canadian Defendants contend that this Texas court's exercise of personal jurisdiction over them "would offend 'traditional notions of fair play and substantial justice'" because they do not operate or conduct business, or own assets, in Texas. (Docket Entry No. 21 at 26 (quoting *Johnston*, 523 F.3d at 609)).

To defeat a Rule 12(b)(2) motion, "the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *see also Johnson*, 523 F.3d at 609; *Hartford Fire Ins. Co. v. Hutchinson*, No. H-05-2078, 2006 WL 903715, at *2 (S.D. Tex. Apr. 6, 2006) ("A plaintiff may present a prima facie case by producing

admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction.").

Junction does not dispute that its amended complaint does not plead facts sufficient to establish general personal jurisdiction over the Plains Canadian Defendants. Junction blames the lack of jurisdictional discovery and argues that discovery would likely generate information supporting general jurisdiction. (Docket Entry No. 28 at 13). Junction emphasizes that the Plains Canadian Defendants "are affiliates or subsidiaries of" the Houston-based Plains All American Pipeline L.P. (*Id.*). But Junction does not address the Plains Defendants' argument that Junction has not pleaded facts sufficient to establish specific or general personal jurisdiction over the Plains Canadian Defendants, other than asking for jurisdictional discovery into the Plains Canadian Defendants' Texas contacts. (*Id.*). Junction requests discovery into the business dealings between the Plains Canadian Defendants and Plains All American Pipeline L.P., including "assets and transfer of assets in or to Texas entities, operating agreements, partnership agreements, and officers and directors of the various Plains Defendants." (*Id.*).

A court may grant jurisdictional discovery when the plaintiff seeking it makes a "preliminary showing of jurisdiction" over a nonresident defendant. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). A preliminary showing is less than a prima facie showing. Jurisdictional discovery is unnecessary when the plaintiff makes a prima facie showing of jurisdiction or, conversely, when the lack of personal jurisdiction is clear. *Kelly v. Syria Petroleum Dev., B.V.*, 213 F.3d 841, 855 (5th Cir.), *cert. denied*, 531 U.S. 979 (2000). The Fifth Circuit generally "affirms denials of discovery on questions of personal jurisdiction in cases where discovery sought could not have added any

significant facts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (internal quotation marks omitted). The plaintiff must "identify the discovery needed, the facts expected to be obtained thereby, and how much [that] information would support jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014) (citing *Mello Hielo Ice, Ltd. v. Ice Cold Vending, LLC*, No. 4:11-CV-629-A, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012)).

Junction has only vaguely identified the jurisdictional discovery it requests. It suggests that this discovery will provide facts sufficient to support this court's jurisdiction because of the relationship between the Plains Canadian Defendants and the Houston-based Plains All American Pipeline L.P. and because of the nature of unspecified aspects of the Plains Defendants' work. (Docket Entry No. 28 at 13). This argument does not meet the standard for jurisdictional discovery. Junction has not detailed discovery it wants, beyond seeking information on "the Plains Canadian Defendants' Texas contacts, and their dealings with Plains All American Pipeline L.P.." (*Id.*). Junction does not explain whether this discovery requires depositions or only written discovery, or explain a more secure basis than the affiliation between the Plains Canadian Defendants and the Plains Houston Defendant for believing that the stringent test for general jurisdiction would be met, or that the discovery sought is tied to a basis for specific personal jurisdiction.

The standard for general jurisdiction "is a difficult one to meet," *Submersible Sys., Inc.*, 249 F.3d at 419. "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required." *Johnston*, 523 F.3d at 609 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)). While Junction's response suggests that it may allege an alter-ego relationship between the Plains Canadian Defendants and

Plains All American so that the latter's Texas contacts may be imputed to the Plains Canadian Defendants, Junction has not explained how its proposed discovery will reveal the facts necessary to succeed on that argument. (Docket Entry No. 28 at 13). The existence of agreements between the Plains Canadian Defendants and Texas entities is unlikely to be enough to show that the Plains Canadian Defendants are "essentially at home" in Texas. Junction has failed to show how the broad and unspecified discovery it seeks will meet this difficult standard. Junction also has not explained how the discovery it seeks is likely to show evidence relevant to specific jurisdiction. The torts alleged did not occur in Texas, and Junction has not argued that jurisdictional discovery could reveal "suit-related conduct" establishing minimum contacts between the Plains Canadian Defendants and Texas.

The Plains Canadian Defendants' motion to dismiss for lack of personal jurisdiction is granted. Junction's request for jurisdictional discovery is denied on the present record.

## III.    The Motion to Dismiss Under Rules 12(b)(4) and (5)

### A.    The Legal Standard

Under Rule 12(b) of the Federal Rules of Civil Procedure, a defendant may challenge personal jurisdiction for "insufficient process" and "insufficient service of process." FED. R. CIV. P. 12(b)(4), (5). "Generally speaking, '[a]n objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service,' while a 'Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint.'" *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x. 688, 691 n.3 (5th Cir. 2008) (per curiam) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed.)). The party effecting service has the burden to prove that service was valid. *Quinn v. Miller*, 470 F. App'x 321,

323 (5th Cir. 2012) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). Without either proper service of process or waiver of that service, a federal court cannot exercise personal jurisdiction over the defendant. *Naranjo v. Universal Sur. of Am.*, 679 F. Supp. 2d 787, 795 (S.D. Tex. 2010) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).

### B.     Analysis

The Plains Defendants argue that Junction sought and obtained a citation for service of process to the wrong company. Because of this error, the Plains Defendants argue, "no effective citation has ever been issued as to or served upon . . . Plains All American Pipeline, L.P." (Docket Entry No. 21 at 27). They contend that Junction instead issued a citation for service of process to All American Pipeline, L.P., which is not a party to the case. (*Id.*). Junction admits to the error and explains that it requested the issuance of summons to Plains All American Pipeline, L.P. on December 13, 2018. (Docket Entry No. 28 at 13; Docket Entry No. 27). On December 17, 2018, that summons to Plains All American Pipeline, L.P., issued, and it was served on January 4, 2019. (Docket Entry Nos. 27, 29).

The Plains Defendants' motion to dismiss for insufficient process and insufficient service of process is denied as moot.

### IV.     The Motion to Dismiss Under Rule 12(b)(6)

### A.     The Legal Standard

Rule 12(b)(6) requires dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to

relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation marks and alteration omitted).

In considering a motion to dismiss under Rule 12(b)(6), "a district court must limit itself to the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court may deny a motion to amend as futile if an amended complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012). Whether to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Id.*

**B.    Analysis**

### 1.    Quiet Title and Ownership of the 1966 Presidential Permit

Junction alleges that because the 1966 Presidential Permit "was obtained for the Permian Cut Bank System[,] which has been owned by Junction since 2008," the Plains Defendants' actions have

interfered with "Junction's ownership of the Cut [B]ank System and, or appurtenances thereto." (Docket Entry No. 19 at ¶¶ 19–20). These alleged interference actions include disparaging and conspiring to disparage Junction's ownership of the Cut Bank System and appurtenances. (*Id.*). Junction seeks a declaration that it owns the Cut Bank System and appurtenances and that the Plains Defendants' claim of an ownership interest in the Cut Bank System "are wrongful and without justification." (*Id.* at ¶ 21). Junction also asks the court to "enter judgment canceling or removing said wrongful claims as clouds or encumbrances or clouds on the Cut Bank System" and "quiet Junction's title to the Cut Bank System and all appurtenances thereto." (*Id.*).

The Plains Defendants argue that Junction's claims center on which party "owns" the 1966 Presidential Permit. (Docket Entry No. 21 at 12). They compare the language from the original and amended complaints and argue that "Junction simply cut-and-pasted the term 'the Cut Bank System and, or appurtenances thereto' in place of references to the 1966 Presidential Permit." (*Id.* at 13). According to the Plains Defendants, these changes are meant to obfuscate Junction's claim of ownership of the 1966 Permit because the amended complaint defines "appurtenances" as "including permits associated therewith." (*Id.* (citing Docket Entry No. 19 at ¶ 14)). They contend that even if ownership of the 1966 Presidential Permit was not the focus, "Junction failed to identify any action by Plains regarding the Cut Bank System," including "when, where, or how [the] Plains [Defendants] supposedly 'utilized' the Cut Bank System" beyond the Plains Defendants' use of the 1966 Permit. (*Id.*). They also point out that Junction has retained "Suit to Remove Cloud on Junction's Ownership of the 1966 Presidential Permit" as a section header. (*Id.* at 14 n.3 (citing Docket Entry No. 19 at 10)).

Junction has not pleaded which state's common law applies to its claims. Junction filed its complaint in Texas state court, which suggests that it may be bringing its claims under Texas law. However, the substance of the amended complaint's allegations suggest that Montana law could apply because the pipelines at issue are located in that state. The court need not decide whether Texas or Montana law applies, because either way, Junction has failed to state a quiet-title claim.

Under Texas law, "[a] suit to clear title or quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Hous. [1 Dist.] 2012, no pet. h). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Hous. [1 Dist.] 2009, pet. denied) (quoting *Angell v. Bailey*, 255 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). A quiet-title claim aims to "declare invalid or ineffective the defendant's claim to title." *Essex Crane*, 371 S.W.3d at 388 (citations omitted). The elements of a quiet-title claim are: "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." *Cruz v. CitiMortgage, Inc.*, No. 3:11–cv–2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)).

Under Montana's quiet-title law, a plaintiff, "whether in actual possession or not" of real property, may "claim[] title to real estate against any person or persons . . . who claim or may claim any right, title, estate or interest therein." MONT. CODE. ANN. § 70-28-101. A plaintiff must identify with specificity the property interest and the alleged action that has interfered with the claim to title. *See, e.g.*, *Fischer v. Loan Serv. Ocwen, LLC*, No. CV-14-94-BLG-SPW-CSO, 2014 WL 6685987,

at *5 (D. Mont. Nov. 25, 2014) (plaintiff stated a quiet-title claim by alleging that the defendant had commenced a foreclosure sale of the plaintiff's home after the plaintiff had negotiated a mortgage payment modification).

The amended complaint does not allege facts stating a plausible quiet-title claim based on a dispute over the ownership of the Cut Bank System or its appurtenances. The amended complaint alleges that the Cut Bank System consists of easements, a 1/3-mile pipeline, "a (LACT) unit for measurement, and a block valve." (Docket Entry No. 19 at ¶ 8). However, the property interest that Junction is alleging as burdened or clouded by the Plains Defendants' actions is not identified in this list of the Cut Bank System assets. Nor does Junction allege when the Plains Defendants interfered with this property interest, which could impact limitations. While Junction alleges that it received ownership of the Scurlock Permian Cut Bank System—covering "all pipelines, rights of way, land rights, and appurtenances thereto, including permits"—in 2008 from Triangle Services LLC, Junction does not allege facts showing that after 2008, the Plains Defendants asserted ownership in, or interfered with, Junction's ownership or use of those assets. (*Id.* at ¶ 14). The Plains Defendants had already applied for and received in 2005 the transfer of the 1966 Presidential Permit from the U.S. State Department in 2008, (*id.* at ¶ 16), but Junction has not pleaded facts supporting an inference that it was unable to, or did, apply to the State Department for transfer of the 1966 Permit. Nor does Junction plead that the 2006 Permit precludes Junction from applying to the State Department now to transfer the 1966 Permit. At most, Junction has alleged that the Plains Defendants used pipelines that were not the subject of the 1966 Permit, but the amended complaint does not allege how that use interfered with Junction's title to, or use of, the Cut Bank System assets.

Junction's dispute over which pipeline system the 1966 Permit was attached to is insufficient to state a plausible claim that a controversy exists over title to, or ownership of, the Cut Bank System and its appurtenances. The 1966 Presidential Permit was "granted to Murphy Oil Corporation." The Permit does not mention Scurlock Permian, the original operator and owner of the Cut Bank System. (Docket Entry No. 21-1 at 2). Junction's amended complaint states that the transfer of the Scurlock Permian interests in the Cut Bank System to Triangle and, ultimately, to Junction, included the transfer of permits associated with the Cut Bank System that Junction alleges is the subject of the 1966 Permit. (Docket Entry No. 19 at ¶ 14). This allegation implies that the transfer included the 1966 Presidential Permit. However, "appurtenances" and permits cannot include transfer of the 1966 Presidential Permit because that Permit clearly states that it cannot "be voluntarily transferred." (Docket Entry No. 21-1 at 2). Junction has not alleged sufficient facts that could show how Scurlock Permian, the original owner of the Cut Bank System, came to acquire rights under the 1966 Presidential Permit or how those rights would have transferred to Junction.

Because the amended complaint does not presently state facts sufficient to show Junction's grounds for entitlement to the relief it seeks, Junction's claim to quiet title is dismissed, without prejudice and with leave to amend.

### 2. The Claims for Trespass and Conversion

Without identifying the applicable underlying state common law, Junction alleges that the Plains Defendants "intentionally conspired to utilize and have utilized the Cut Bank System and, or appurtenances thereto, without Junction's consent or agreement to import substantial quantities of crude [oil] into the U.S." (Docket Entry No. 19 at ¶ 22). These actions, Junction alleges amount to trespass that began in 2008. (*Id.*). Junction seeks damages equal to "the value of the use of [the] Cut Bank System and, or appurtenances thereto." (*Id.* at ¶ 23). Junction also asserts a conversion

claim, alleging that the Plains Defendants "collectively conspired to assert, and have asserted, wrongful and intentional dominion over the Cut Bank System and, or appurtenances thereto." (*Id.* at ¶ 24).

The Plains Defendants argue that Junction has not pleaded facts sufficient to state plausible claims for trespass or conversion. (Docket Entry No. 21 at 23). They argue that the amended complaint provides only "conclusory allegations that the Plains Defendants" have and continue to use and assert control over the Cut Bank System and its appurtenances. (*Id.* (citing Docket Entry No. 19 at ¶¶ 22, 24, 26)). They contend that if Junction is not claiming ownership of the 1966 Presidential Permit, then it has not pleaded facts sufficient to state plausible trespass or conversion claims. (*Id.*).

Again, Junction has not explained under what state's common law its claims arise. Under either Texas or Montana law, the likely sources, Junction has failed to state plausible claims for relief for trespass and conversion.

Under Texas law, a trespass occurs when a person intentionally enters another's property without consent. *Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 509 n.4 (Tex. App.—Eastland 2008, pet. denied). A plaintiff must plead facts that could show that: (1) the plaintiff owns the property or has rights to the property; (2) the defendant entered that property physically, intentionally, and voluntarily, and (3) the entry caused injury to the plaintiff. *Id.* To state a plausible conversion claim, a plaintiff must allege facts that would show "some repudiation of the owner's right or an exercise of dominion over the property, wrongfully and in denial of or inconsistent with that right; or, there must be an illegal assumption of ownership." *Dolenz v. Nat'l Bank of Tex. at Fort Worth*, 649 S.W.2d 368, 370 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

Under Montana law, a trespass "is an intentional tort claim for damages caused by the unauthorized entry or holdover upon the real property of another." *Davis v. Westphal*, 405 P.3d 73, 81 (Mont. 2017). Montana has adopted the trespass definition in the RESTATEMENT (SECOND) OF TORTS, which requires a plaintiff to plead facts that could show that the defendant intentionally entered the plaintiff's property, remained on that property, or failed to remove something from that property that the defendant had a duty to remove. *Branstetter v. Beaumont Supper Club, Inc.*, 727 P.2d 933, 935 (Mont. 1986) (citing RESTATEMENT (SECOND) OF TORTS § 158 (1965)). To succeed on a conversion claim requires proof that the plaintiff "own[s] the property; that [the] plaintiff [has] the right to possess the property; that [the] defendant exercise[d] unauthorized control over the property; and that [the] plaintiff suffer[ed] damages." *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 608 (Mont. 2014).

Beyond alleging that the Plains Defendants have continued to import crude oil under the authority of the 1966 and 2006 Presidential Permits, even though those Permits attach to a different pipeline system than the Cut Bank System, Junction has not alleged facts that could show how the Plains Defendants have interfered with, or trespassed on, Junction's property rights in the Cut Bank System. Junction has not alleged with specificity the property that the Plains Defendants trespassed on or converted. Instead, Junction alleges a variety of assets it owns in the same area as the Plains Defendants' assets. As the Plains Defendants point out, Junction does not allege that it uses the Cut Bank System; that the Plains Defendants have claimed ownership over the Cut Bank System; that Scurlock Permian received a Presidential Permit that applied to or covered the Cut Bank System; that Junction applied for a Presidential Permit that applied to or covered the Cut Bank System; or that the Plains Defendants have interfered or prevented Junction from applying for a new Permit or

for a transfer of the 1966 Permit. (Docket Entry No. 21 at 9). Junction acquired Scurlock Permian's Cut Bank System in 2008, but Junction has not pleaded facts that could show how, or that, the Plains Defendants took actions after 2008 that interfered with Junction's interests in that property.

Junction has not pleaded with specificity what the property interest at issue that is that the Plains Defendants' actions have interfered with or burdened, or how that has occurred. The allegations that the Plains Defendants violated the 1966 Permit alone are by themselves insufficient to state a plausible claim that the Plains Defendants' actions interfered with Junction's property interests. Because Junction has not pleaded facts sufficient to support its claims for trespass and conversion, those claims are dismissed, without prejudice and with leave to amend.

### 3.    Junction's Request for a Declaratory Judgment

Declaratory relief is procedural. Junction's claim is under the federal Declaratory Judgment Act. *See, e.g.*, *Ortiz v. Citimortgage, Inc.*, 954 F. Supp. 2d 581, 589 (S.D. Tex. 2013); *Redwood Resort Props., L.L.C. v. Holmes Co.*, No. 3:06-CV-1022-D, 2007 WL 126606, at *4 (N.D. Tex. Apr. 30, 2007). The Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000), the Fifth Circuit set out a three-step process for courts to follow in deciding whether to dismiss a declaratory judgment action. "A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix*, 212 F.3d at 895). If the action is

justiciable and is within the district court's authority, that court must determine how best to exercise its authority. *See id.* The Act requires judges to look to other substantive law defining the cause of action to answer these questions. *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

The Fifth Circuit "interprets the § 2201 'case of actual controversy' requirement to be coterminous with Article III's 'case or controversy' requirement." *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). An "actual controversy" is a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (citation and internal quotation marks omitted). The controversy "must be 'of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.'" *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936)). The dispute must be capable of present decision, "not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967). The party seeking a declaratory judgment has the burden of establishing an actual controversy. *Val-Com Acquisitions Tr. v. Chase Home Fin., LLC*, 428 F. App'x 364, 365 (5th Cir. 2011).

Junction alleges that the 1966 Presidential Permit was attached to the "specific . . . pipeline facilities that [were] the subject of the [Permit] application." (Docket Entry No. 19 at 10). "The assignee of a pipeline system for which a presidential permit exists has the right to seek transfer of such permit." (*Id.*). Junction seeks a declaratory judgment that it owns the Cut Bank System because the System was assigned to Junction through a series of transactions involving the Plains

Defendants and Triangle; that the System "is the subject of the 1966 [P]residential [P]ermit"; and Junction has "the right to claim the [P]ermit issued to Plains in 2006 . . . and to seek the transfer of such [P]ermit." (*Id.*).

Junction argues that the Plains Defendants have mischaracterized the case as based on the ownership of the 1966 Presidential Permit. (Docket Entry No. 28 at 4). Instead, Junction contends that the declaratory relief it seeks would state "which pipeline system the 1966 [P]ermit was issued for." (*Id.*). Junction argues that Presidential Permits are pipeline-specific. Because the 1966 Presidential Permit was for "a length of pipe approximately 1/3 of a mile long, a 'measuring station,' and a 'block valve' on the American side," Junction argues that these were all part of Scurlock Permian's Cut Bank System. (*Id.* at 4–5). Junction argues that the Plains Defendants' application for the 2006 Presidential Permit misleadingly referred to the Milk River Pipeline Crossing, but it also "professed compliance with executive orders relating to permits generally, committed to abide by the terms of the 1966 Permit, and stated that the operation of the pipeline would remain essentially unchanged." (*Id.* at 6). Junction argues that because it ultimately purchased Scurlock Permian's Cut Bank System, it owns the pipeline that is the subject of the 1966 Permit and is entitled to a declaratory judgment confirming that it is the exclusive owner of that pipeline and that it has the only right to transfer that Permit from the State Department. (*Id.* at 10). Junction contends that the requested relief requires only "a simple review and construction of the 1966 Permit Application, the 1966 Permit, the Plains/Triangle Purchase and Sale Agreement and assignment, and the Triangle/Junction assignment." (*Id.* at 11). It asserts that the dispute over who owns the pipeline covered by the 1966 Presidential Permit meets the standards for declaratory relief. (*Id.*).

The Plains Defendants respond that, despite Junction's focus on the "Cut Bank System and,

or appurtenances thereto," the 1966 Presidential Permit is the only source of Junction's claims. The Plains Defendants point out that Junction has retained as a section header, "Suit to Remove Cloud on Junction's Ownership of the 1966 Presidential Permit." (Docket Entry No. 21 at 14 n.3 (citing Docket Entry No. 19 at ¶ 19)). The Plains Defendants argue that because Junction is claiming ownership of the 1966 Permit, the amended complaint fails as a matter of law because: (1) the Permit is nontransferable, and Junction does not allege facts explaining how it could own the Permit without a transfer; (2) Presidential Permits do not give rise to the private causes of action asserted in the amended complaint; and (3) a Presidential Permit is not subject to judicial review. (*Id.* at 14).

The Plains Defendants point to the language of the 1966 Permit stating that "[n]either this permit nor the United States facilities nor any part thereof covered by this permit, shall be voluntarily transferred in any manner." (*Id.* at 15 (citing Docket Entry No. 21-1 at art. 7)). The Plains Defendants challenge Junction's "unsupported legal assertion that '[P]residential [P]ermits attach to the pipeline facilities which are the subject of the application on which the [P]ermit is issued.'" (*Id.* (citing Docket Entry No. 19 at ¶ 7)). They point out that the 1966 Permit granted to Murphy Oil "does not mention the Cut Bank System, and . . . Murphy Oil never owned or operated the Cut Bank System." (*Id.*). The Plains Defendants argue that Junction does not plead facts sufficient to plausibly claim that 1966 Permit nevertheless attached to the Cut Bank System or that the 1966 Permit was transferred through the series of asset transfers identified in the amended complaint, despite the Permit language prohibiting transfer. (*Id.*).

Similarly, the Plains Defendants argue that Junction's request for a declaratory judgment that it has the exclusive "right to claim the [P]ermit issued in 2006" fails because the 2006 Permit is nontransferable and specifically identifies the Milk River Pipeline as its subject; specifically

identifies PMC Nova Scotia, a Plains Defendant, as the operator of the Milk River Pipeline and the recipient of the Permit; and Junction admits that it does not, and did not, own or operate the Milk River Pipeline. (*Id.* at 16).

The Plains Defendants also challenge Junction's amended complaint on the ground that the 1966 Permit does not create a private cause of action. (*Id.*). They argue that the Permit provides Murphy Oil—not Junction—a right "to construct, operate, and maintain a pipeline," but that the Permit does not create "an *exclusive* right." (*Id.*). They explain that only the President could act against third parties allegedly interfering with the rights provided in a Presidential Permit. (*Id.* at 17). The Plains Defendants point to Executive Order No. 13,337, which explains that Presidential Permits do not "create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law or in equity by any party" against any person. (*Id.* (citing Exec. Order No. 13,337, § 6)).

The Plains Defendants also argue that Junction's claims are not subject to judicial review. (*Id.* at 17). "[W]hen the President grants permits to operate international oil pipelines he does so pursuant to his inherent constitutional authority to conduct foreign affairs." (*Id.*). Because a presidential action under this foreign-affairs power is not subject to judicial review, the Plains Defendants contend that a court cannot "review the grant or denial of presidential permits." (*Id.* at 19 (citing *White Earth v. Kerry*, No. 14-CV-4726-MJD-LIB, 2015 WL 84832, at *7 (D. Minn. Dec. 9, 2015); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of State*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009); *Sisseton-Wahpeton Oyate v. U.S. Dep't of State*, 659 F. Supp. 2d 1071, 1078 (D.S.D. 2009))).

The Plains Defendants finally argue that Junction "has failed to identify an actual

controversy between the parties." (Docket Entry No. 21 at 21). They assert that Junction has not alleged facts that could show that the parties dispute ownership of the Cut Bank System, or that the Plains Defendants have "interfered in any way with Junction's use of the Cut Bank System." (*Id.* at 22). The Plains Defendants also argue that Junction has not shown that it has sought its own Presidential Permit for transporting crude oil through the Cut Bank System or how the Plains Defendants have or could have interfered with such an application. (*Id.*).

It is unnecessary for the court to wade into all these reviewability issues or to decide whether Junction's claims allege ownership of the 1966 Presidential Permit. Junction's amended complaint does not plead facts sufficient to state a plausible cause of action that would allow the court to grant the declaratory relief sought. A fundamental problem is that Junction has not alleged facts that, under the applicable substantive law, could show that the Plains Defendants have interfered with Junction's property rights. A declaratory judgment is not a cause of action, but instead a procedural tool that permits early adjudication of a controversy arising under other, substantive law. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227 (1937); *Lowe*, 723 F.2d at 1178. To state a plausible claim that could support its request for a declaratory judgment, Junction must meet the pleading requirements for at least one of its claims, whether quiet title, conversion, or trespass. Junction must allege with greater particularity its property interest at stake, the Plains Defendants' actions that interfered with or clouded that interest, and when and how that alleged interference or clouding took place. Junction has not alleged facts in the amended complaint that would allow the court to find a current controversy between Junction and the Plains Defendants justiciable the Declaratory Judgment Act.

### 4. Junction's Request for Injunctive Relief

A plaintiff must show that it is substantially likely to succeed on the merits of the claim for injunctive relief. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975); *see also DCS Commn'cs Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999). Because none of Junction's claims survives the Plains Defendants' motion to dismiss, Junction's request for injunctive relief is also dismissed.

### 5.      Whether Further Amendments Would Be Futile

The Plains Defendants urge the court to dismiss Junction's claims with prejudice because "Junction's goal is to have this Court rule that Junction is entitled to the 1966 Presidential Permit. "Junction cannot own the 1966 Presidential Permit," and "there is no dispute between the parties" as to the ownership of the Cut Bank System that would provide the basis for Junction's claims. (Docket Entry No. 21 at 23–24). They argue that because Junction's claims focus on relief it cannot obtain, amendment would be futile. (*Id.*).

If Junction can plead facts showing that the Plains Defendants interfered with its property interests, it may have a basis for a claim. Although Junction has amended once, the dismissal of Junction's claims is without prejudice because it is not clear that further amendment would be futile.

## IV.    Conclusion

Because Junction has failed to make a prima facie showing of personal jurisdiction over the Plains Canadian Defendants, Junction's claims against them are dismissed under Rule 12(b)(2). Junction's request for jurisdictional discovery is denied because Junction has not shown how specifically this discovery would reveal information supporting its claim of specific or general jurisdiction over those defendants. The Plains Defendants' motion to dismiss for insufficient service of process under Rules 12(b)(4) and 12(b)(5) is dismissed as moot. The Plains Defendants' motion

to dismiss Junction's claims under Rule 12(b)(6) is granted, without prejudice and with leave to amend. Junction must file an amended complaint no later than **March 1, 2019**. The initial pretrial and scheduling conference is reset to **March 25, 2019, at 3:30 p.m.** The joint discovery/case management plan is due by March 18, 2019.

SIGNED on February 4, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge